# THE BALTIMORE CONSOLIDATED RAILWAY CO. *vs.* JAMES W. ARMSTRONG.

*Contributory Negligence—Standing Between Tracks of Street Railway—Instruction to the Jury.*

Two electric cars, one on the north and the other on the south track of the railway, were standing to take on and discharge passengers on the opposite sides of a cross street, when the plaintiff, a large fleshy man, went with a "cooling-board" to the front platform of one of the cars for the purpose of handing it over the gate to the motorman. He approached this car between the tracks, although the way to the other side of the car, nearest the sidewalk, was unobstructed. While he was standing there the other car approached slowly, its gong ringing, and plaintiff's back being turned towards it. Both motormen cried out a warning, but plaintiff was caught between the cars and injured. The preponderance of the evidence showed that when the car which caused the injury crossed the street plaintiff was standing on the front step of the other car, out of the way of danger, and stepped down immediately before he was struck, although plaintiff testified that he had not gotten on the step of the car. *Held,* that the plaintiff, by putting himself in an obviously dangerous position, was guilty of such contributory negligence as precludes a recovery of damages from the railway company and that, under the circumstances of this case, it was error to instruct the jury that, although plaintiff was guilty of negligence, yet that is not a bar to recovery if the motorman of the approaching car could have avoided the accident by the exercise of due care after he saw or could have seen the plaintiff's peril.

Appeal from the Baltimore City Court (RITCHIE, J.) The plaintiff obtained a verdict below for $500.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Geo. Dobbin Penniman* (with whom were *E. J. D. Cross* and *Fielder C. Slingluff* on the brief), for the appellant:

The rule of contributory negligence to be applied in this case should be as follows: *First,* if A and B have both been guilty of negligence contributory or tending presumably to produce the injury complained of, A cannot recover damage of B *un-*

*less, after discovering the negligence of A*, B could have avoided the consequences of A's negligence, that is, could have avoided the injury which took place by the exercise of ordinary care. *Second*, one person is not bound to anticipate that another person, being *sui juris*, will negligently expose himself or his property to injury, and is not bound to make provision against the consequences of such negligence.

There can be no doubt that the obligation to exercise ordinary care was mutual to both the plaintiff and defendant in this case. This obligation affected both parties up to the very instant the accident occurred, and the plaintiff was not at any time in such a position that he could not have avoided the injury. The plaintiff could not put himself in a position of danger, and then, because the motorman of the north-bound car, which was approaching him, saw him or *could* have seen him, still remain in a position of danger as the car approached him, and made his escape more and more difficult, if by the exercise of ordinary care he could have escaped. He cannot, we submit, throw on the defendant any greater responsibility to take care of him than he is bound to exercise himself, but the tendency has grown up in the decisions of this Court as well as the Courts of other States to rule that as soon as the plaintiff, who may have put himself in a position of danger, is seen, or *should* have been seen by the defendant in that position of danger, that the whole burden of avoiding the accident is cast upon the defendant, and the fact that the plaintiff, by the exercise of ordinary care, *may still, after that time, avoid the injury*, is overlooked or forgotten, and the whole question turns upon whether the defendant could or should have then avoided the injury. It is this tendency in the decisions of the Courts to increase the burden of the defendant which has been so criticised in 2 *Thompson on Negligence*, 1155; *Beach on Contrib. Neg.*, chaps. 1 and 2. It is a tendency which has crept gradually into the decisions and has been caused by the adoption of rules which were proper in cases where the plaintiff was incapacitated or unable to remove himself from the position of danger when noticed by the de-

fendant, although the defendant still had time, by exercise of ordinary care, to avoid the injury. There are other cases, however, where the plaintiff was in full possession of his powers and as able, by the exercise of ordinary care, to avoid the injury up to the time the accident occurred as was the defendant, and in these cases we think that the exception has been carried too far.

The rule which was introduced into the law of contributory negligence by the case of *Davies* v. *Mann*, 11 East, 60 (*Beach on Contributory Negligence*, section 27), which permits the plaintiff to recover, although guilty of contributory negligence, if the defendant could have avoided the result of that negligence, must not be applied unless the plaintiff was in such a position that he was helpless and therefore unable to continue to make proper efforts to escape from the approaching danger, and it must appear that the defendant had knowledge of this helplessness and *after* acquiring this knowledge was able to prevent the accident, but did not try to do so. It is not necessary that all prayers, based upon the contributory negligence of the plaintiff, which conclude to the jury should contain the exception that the rule is not to apply if the defendant could have avoided the accident, because this exception should only be applied in cases where the Court can see from the evidence that at some time prior to the happening of the accident the plaintiff was helpless and unable to do more to avoid injury, while the defendant, on the contrary, had notice of the plaintiff's condition, and still had an opportunity to prevent the accident. This exception should not be applied in a case like the one under discussion, where the negligence on the part of both parties was certainly *concurrent*, for the plaintiff stayed in a dangerous position between the tracks while the car approached him, as he himself testifies, and by the uncontradicted evidence in the case he could have stepped on the car step and remained in perfect safety, or by the exercise of a little agility have avoided the car. He remained between the two tracks trusting that there would be sufficient room. The defendant's evidence showed that the plaintiff was on the car

step in a position of safety as the north-bound car began to pass, and that he then left the step and tried to pass between the cars.

The rule laid down in *Davies* v. *Mann*, 10 M. & W. 545, which was meant to be applied where the plaintiff, previous to the accident, was in a position of helplessness, while the defendant was still able, by the exercise of ordinary care, to avoid the injury after he was aware of the plaintiff's condition, has been extended in this State, as elsewhere, improperly, we submit, to cover cases where the plaintiff was fully capable up to the time of the injury of avoiding the accident. The rule has been extended so far in this State at present that it has practically relieved a person using the street of any obligation to avoid an approaching car if that person can see that the motorman of the car had seen or *should have seen* him. It has practically relieved persons using the street of any responsibility, because the excuse can always be made in answer to the charge of contributory negligence, that the motorman in charge of the car could have seen that a collision would occur, and the duty existed on his part to stop in spite of the fact that the plaintiff might have continued to approach the track without the exercise of any ordinary care. The old limitation, that the rule was not to apply when the plaintiff was as free to avoid the injury as the defendant, and therefore the accident was concurrent, has been overlooked by the Courts entirely, and without meaning it the decisions have to a great extent destroyed the defense of contributory negligence. *Lake Roland Ry. Co.* v. *McKewen*, 80 Md. 593; *Traction Co.* v. *Appel*, 80 Md. 603; *Consol. Ry. Co.* v. *Rifcowitz*, 89 Md. 338.

It will be noticed that the modification of the defendant's first prayer contains the error which, we submit, has crept into the law of imposing the obligation to prevent the injury, not only *after* the plaintiff's peril has become evident, but the further burden that the plaintiff's peril *must* be seen and noted by the defendant. The prayer as modified provides that if the plaintiff had been guilty of contributory negligence, etc., he cannot recover unless the jury find " that after the defendant's

motorman saw *or by the exercise of due care might have seen* that the plaintiff was not exercising due care, etc., the motorman could have avoided the accident." There is no provision here as in the old decisions, and we contend, as is necessary in the spirit of the law, that this additional burden should not be applied until the defendant is aware of the plaintiff's dangerous position in time to avoid the injury ; but the *absolute* obligation has been placed upon the defendant to see the plaintiff's peril. And as the motorman admittedly did not see the plaintiff's position of peril until it was too late, this instruction permitted the jury to find for the plaintiff, although they may have believed that up to the very moment of the accident the plaintiff, by the exercise of ordinary care, might have avoided it. It is the very failure to see the plaintiff's negligence, which is generally the only negligence on the part of the defendant, and this negligence is surely only concurrent with the negligence of the plaintiff. We submit that the rule should be as it was laid down by this Court in the *Neubeur case*, 62 Md. 391, *i. e.*, that where the negligence is concurrent there can be no recovery, and these decisions and the modifications of the rules which have been applied in the *Rifcowitz case, Appel's case*, and *McKewen's case*, should be limited to an additional responsibility on the part of the defendant *only* in cases where the plaintiff's contributory negligence has put him in a position from which he cannot extricate himself in time to avoid the injury, and after he is in this perilous position this fact is brought to the knowledge of the defendant at a time when, by the exercise of a proper degree of care, the defendant can avoid the injury.

In other words, as some of the cases put it, if the plaintiff, in the first place, is helpless as a drunken man who lies in the street, or his contributory negligence puts him in a position where he cannot escape, and then his helplessness is brought to the knowledge of the defendant at a time when the defendant can avoid the injury, then it is an *additional* wrongful act of negligence to *wilfully* injure the helpless plaintiff. This piece of wilfull injury after knowledge is an entirely different

piece of negligence from the negligence which was existing concurrently with that of the plaintiff before the knowledge was brought to the defendant.   To illustrate, let us suppose two men are driving in different vehicles on intersecting streets, and both happen to be looking at a fire or something else which may absorb them, the lines of travel of their vehicles will cross at right angles, they got closer and closer together, both being concurrent negligent, until a collision occurs and one is injured.   In that case there could be no recovery ; but suppose before they got into collision, and while their horses are at a distance from the point where their lines of travel will intersect and the collision will occur, one of the men ceases looking at the fire and sees the other wagon driving in front of him with that driver still gazing in the air, this first man has a *new* and *additional* duty to perform.   If he permits his horse to still continue on and causes a collision and injury to the other man he has done this wilfully, and there could be a recovery.   We submit, therefore, that the ruling of the Court in adding the modification to the defendant's first prayer in the form used is improper, as it imposes upon the defendant the duty of seeing the dangerous position of the plaintiff, and a failure to perform this duty is not treated as a default which may be wiped out or cancelled by the plaintiff's concurrent neglect, but a failure to perform this duty practically gives the plaintiff a right to recover in spite of his own contributing negligence.   Surely this is a denial of justice.

*Harry W. Henderson* and *Harold B. Scrimger* (with whom was *H. M. Nitzel* on the brief), for the appellee :

The proposition contained in the defendant's first prayer is too broad and is improperly stated ; it states simply that the verdict should be for the defendant if the plaintiff could have avoided the accident by the use of proper care, and does not instruct the jury as to the duty of the defendant to use ordinary care.   "There are no circumstances under which the defendant could be relieved of the duty of using ordinary care." *B. & O. R. Co.* v. *State, use of Trainor,* 33 Md. 556.   The

modification by the Court of the defendant's first prayer consists of the addition of an instruction to the jury as to the duties of the defendant, and as thus modified the prayer is sustained in its principles and language by many decisions of this Court. *Balto. Traction Co.* v. *Appel*, 80 Md. 603; *Md. Central Ry. Co.* v. *Neubeur*, 62 Md. 391; *B. & O. R. Co.* v. *Kean*, 65 Md. 394.

The second prayer of the defendant was defective in that it failed to state the correlative duty of the defendant under the circumstances. A similar instruction was rejected by the Court in the case of *People's R. R. Co.* v. *Green*, 56 Md. 86, this Court having held in numerous decisions, that even though the plaintiff may be guilty of negligent conduct, nevertheless he can recover, if the defendant after he saw or could have seen the perilous position of the plaintiff could have avoided the accident by the use of ordinary care.

SCHMUCKER, J., delivered the opinion of the Court:

This is an appeal from a judgment obtained in the Baltimore City Court by the appellee for damages sustained by him from having been caught and injured between two electric street cars operated by the appellant.

There was evidence tending to prove the following facts. The appellee had been riding westward on Pratt street in a car and alighted therefrom at the intersection of Pratt and Charles streets for the purpose of boarding a south-bound car on the latter street. When he left the Pratt-street car there was a south-bound car standing on Charles street at the north side of Pratt street and a north-bound car standing on Charles street at the south side of Pratt street. He says that he looked for a car on Charles and saw the south-bound one, which he wished to take, but saw no north-bound one. He at once took from the front platform of the car on which he had been riding, "a cooling-board," measuring about 37½ inches long by 20½ inches wide, and started with it in his hands for the south-bound car on Charles street. Instead of going around this car to its west side which was nearest the sidewalk and out of the way of other

tracks, he went directly across Charles street to the east side of the car next to the north-bound track and from that position handed his cooling-board over the gate at the front platform of the car to its motorman.    Just as he finished putting the board over the gate the north-bound car which was then in motion reached him and he was caught between the two cars and injured.

The evidence as to the precise manner in which he got between the two cars is explained by the witnesses as follows: The motormen on both cars, the conductor of the north-bound car, and a witness who was standing at the front of that car, all testified that when the north-bound car reached the plaintiff he was standing in a safe place on the step to the front platform of the south-bound car, handing his cooling-board over the gate to the motorman.    The witness, who was standing at the front of the moving car, and the motorman, who was receiving the cooling-board, both say that the plaintiff stepped or jumped down between the cars.    Both motormen say that they warned the plaintiff to "look out" as the north-bound car was coming up to him, and the motorman on that car testified positively that the plaintiff responded, "all right," to his warning and then stepped up on to the step where the car of the witness could have safely passed him if he had remained in that position.    Both the motorman and the conductor of the north-bound car testified that their car was slowly crossing Pratt street with its gong ringing when it came up to the plaintiff.

The plaintiff, although he testified that he "could hardly tell how it happened," that he got between the cars, said, "I saw that the street (Charles street) was clear, when I started over, as far as the south side of Pratt street, there was no wagon or nothing in sight.    I hurried across and somebody said "look-out," as I looked out I found that I either had to be picked up by the car or get between the cars."    He further testified that while he was putting the cooling-board over the gate of the south-bound car to the motorman, he looked right at the motorman, and did not keep his eye on the north-bound track,

and that he heard no gong ring, that just as he got rid of the board the motorman, who was taking it from him, said "look-out," and he cast his eye down and the north-bound car was right on him; that there was then no chance but to get between the cars; that he "had not the least idea that he would not have room there between the cars," and that he got between them and was injured.    He was a large fleshy man.

The motorman, who took the cooling-board from the plaintiff, further testified, without contradiction, that when the latter started to go between the cars, he called to him to go around in front of the south-bound car, and that there was plenty of room for him to do so safely as the fender was narrower than the car, but the plaintiff, instead of taking his advice, got between the two cars.

The plaintiff testified in rebuttal that he did not get upon the step of the north-bound car when he handed the cooling-board over the gate to the motorman, but he did not refer to or deny the statements made by the witnesses for the defense that he had answered, "all right," to the warning of the north-bound motorman, or that as he was going between the cars the south-bound motorman told him to go around in front of the fender of his car which was not in motion.

There is but one exception in the record and that was taken to the action of the Court upon the prayers.    The plaintiff offered three prayers all of which were granted, and the defendant offered seven prayers, of which the second and third were rejected, the fourth, sixth and seventh were granted, and the first and fifth were granted as modified by the Court.

The plaintiff's second prayer and the defendant's first prayer, as modified by the Court, substantially directed the jury that if they found the plaintiff guilty of contributory negligence that would not disentitle him to recover, *if the defendant's motorman could have avoided the accident by the exercise of due care after he saw or ought to have seen the plaintiff's peril.* Neither of these two prayers was objectionable in the form in which it was granted, if the facts of the case justified the Court in modifying, in the manner just stated, the general doctrine that neg-

ligence on the part of the plaintiff contributing directly to the injury complained of will debar his recovery of damages therefor.

The appellant earnestly contended in its brief and at the argument that this Court in its recent decisions, especially in *McKewen's and Appel's cases*, 80 Md. 593 and 603, and *Rifcowitz's case*, 89 Md. 338, had gone much further in the use of this modification of the general doctrine than in its earlier cases, and that it had in fact gone so far in that direction as to practically destroy the defense of contributory negligence. He cited *Md. Cent. R. R. Co.* v. *Neubeur*, 62 Md. 391, as containing a statement of the views held by the Court on this subject prior to the recent decisions. The fact, however, is, that long prior to the decision of that case the use of precisely the same form of modification of the general doctrine as that employed in two prayers now under consideration had been definitely sanctioned by this Court in *N. C. R.* v. *Price*, 29 Md. 436; *B. & O. R. Co.* v. *Trainor*, 33 Md. 554; and *Klipper* v. *Coffey*, 44 Md. 128, and it was declared to be "the settled law of this State" in the case of *B. & O. R. Co.* v. *Mulligan*, 45 Md. 494. The modification may be regarded as having originated in the cases of *Davis* v. *Mann*, 10 Mees. & Wels. 546, and *Tuff* v. *Warman*, 94 Eng. Com. Law Reps. 573, both of which were cited with approval in *Price's and Mulligan's cases, supra*.

*Neubeur's case* was one of a collision at a crossing on a steam railroad and there was evidence that the plaintiff failed to exercise ordinary care in looking up and down the track as he approached it. The lower Court granted a prayer instructing the jury that even if they found the plaintiff guilty of contributory negligence he was still entitled to recover, " unless they further find that the defendant could not by the exercise of care and diligence on its part have avoided such accident." This Court held the prayer bad, because it failed to define with accuracy the relative duties and obligations of the parties under the facts of that case, and left the jury at liberty to regard as negligence on the part of the defendant the omission by it of any one of a number of precautions mentioned in the evi-

dence, some of which it was and others of which it was not legally bound to observe. In defining the doctrine of contributory negligence the Court in that case say : " The general principle, is, that where both parties by their negligence directly contributed to the production of the accident, neither has the right to recover of the other for the injury sustained thereby. But there are exceptions to this general rule ; and in cases like the present the exception is that if the defendant or those acting for it had become aware of the perilous situation of the plaintiff, though that peril had been incurred by the negligence or even reckless conduct of the plaintiff, yet the defendant or its agents would be bound to use all reasonable diligence to avoid the accident. But in order that this qualification of, or exception to, the general rule may be successfully invoked by the plaintiff he must show knowledge on the part of the defendant or its agents of the peril in which he, the plaintiff, was placed, and that there was time after such knowledge within which to make an effort to save him from the impending danger."

The difference between the modification of the general principle recognized as proper in *Neubeur's case* and that sanctioned by this Court in the recent cases is simply that in the former case the defendant was held liable if he could, by the exercise of reasonable care *after he became aware* of the plaintiff's peril, have averted the accident, and in the latter cases he was held liable if he could have prevented it after he became, or *ought to have become, aware* of the peril. There is no difference in principle between these two forms of instruction to the jury, for it cannot be seriously contended that when the defendant is in a position from which he ought to see or by the exercise of reasonable care could see the plaintiff's peril, he may avert his face or close his eyes and not see it and then escape liability for an injury resulting from such conduct on his part. As was said by this Court in *Cooney's case*, 87 Md. 268 : " The law will not permit the loss of life or limb or even property to be deliberately and carelessly inflicted, when it could by reasonable care and caution be averted, merely because the injured person was negligent.".

This modification of the general doctrine of contributory negligence should not be constantly or indiscriminately used in instructing juries in suits for injuries caused by negligence, but its employment should be confined to those cases in which there is testimony placing the defendant or his agent in a situation affording him an opportunity to discover the plaintiff's peril, by the exercise of reasonable care, in time to avert it. The recent cases of *McKewen*, *Appel* and *Rifcowitz*, to which we have referred, were all cases of injury by electric street cars to persons crossing their tracks at intersecting streets. In both *McKewen's* and *Rifcowitz's cases* the car which inflicted the injury was running at a high rate of speed and the evidence tended to show that if the motorman had slackened his speed and held his car well under control as he approached the crossing he could have seen the plaintiff in time to have prevented the accident.  In *Appel's case* there was evidence that the motorman did not use the ample opportunity which he had after he ought to have seen the plaintiff to protect him from injury.  In those three cases the evidence plainly called for the form of instruction given by the Court to the jury.

Applying the principles which we have been considering to the case now before us, we do not think it was a proper one in which to modify the general proposition that the plaintiff's contributory negligence barred his right of recovery.  He was palpably guilty of negligence which contributed directly to his injury and without which the injury would not have happened.  He had, it is true, an equal right with the car to be upon the track, which was laid in a public street of the city, but he went deliberately when encumbered with his awkward cooling-board to the dangerous side of the south-bound car when access to its safe side was unobstructed, and he stood there until he could pass the cooling-board over the gate of the front platform to the motorman and meanwhile kept no lookout for approaching cars on the north-bound track which was almost under his feet.

It is not denied that the motorman of the approaching car saw the plaintiff between the tracks as he came near him.  The

only question on that branch of the case is whether after seeing the plaintiff he used reasonable care to prevent injury to him.   If the testimony of the motorman, to which we have already adverted and which is corroborated by three other witnesses, is to be believed, he gave the plaintiff timely warning and the plaintiff at first heeded the warning and got into a safe place which he, in his confusion, afterwards abandoned. This testimony is only contradicted to the extent that the plaintiff in rebuttal said that he had not gotten upon the step of the car, but he himself had already testified that he could hardly tell how it happened, that he got between the cars and he was evidently much confused at the time of the accident.   Furthermore, the uncontradicted testimony of the motorman of the south-bound car was that when he saw the plaintiff about to go between the cars he told him to go around the fender of his car where there was room for him to go in safety.   The plaintiff further testified that when he went between the cars he thought there was ample room for him there.

The testimony in the case did not in our opinion justify the Court below in granting the plaintiff's second prayer or in modifying the defendant's first prayer as it did.   We further think that in view of the undoubted contributory negligence of the plaintiff, without which the accident would not have occurred and the practical absence of evidence tracing the cause of the injury to negligence of the defendant's agents, the case falls within the principles laid down in *State, use of Bacon*, v. *B. & P. R. Co.*, 58 Md. 485, and the case there cited of *Dublin, &c., R. Co.* v. *Slattery*, 3 App. Cases, House of Lords, 1166, and the Court below would have been justified in withdrawing it from the jury if an instruction to that effect had been asked for.

We think that the judgment should be reversed without a new trial and for that reason it will not be necessary for us to review the action of the Court below on the other prayers.

*Judgment reversed without new trial.*