## PENNSYLVANIA RAILROAD COMPANY
## *v.* STELLA SIMMONS.

[No. 42, January Term, 1930.]

*Decided May 2nd, 1930.*

116

118

120

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*T. Sangston Insley* and *F. W. C. Webb,* with whom were *Carroll E. Bounds* and *Woodcock & Webb* on the brief, for the appellant.

*Emerson C. Harrington* and *Arthur L. Jackson,* with whom were *Harrington & Harrington* and *Miles & Bailey* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

This suit grows out of a crossing accident on July 4th, 1928. Appellee, who was plaintiff below, together with her husband and three little girls, two of whom were her children, was riding in an automobile driven by her husband, on the public road leading from Berlin to Ocean City. The crossing is a few hundred feet east of the town of Berlin. The automobile stalled on the railroad track and was struck by a train of defendant. Plaintiff's husband was killed and she

was seriously injured. She sued the defendant for her injuries and obtained a verdict. This appeal is from a judgment on that verdict.

There are eight exceptions in the record, seven to rulings on evidence and one to the ruling on the prayers.

The first and second exceptions are to permitting interrogatories to a non-medical witness as to the mental condition of plaintiff, before and after the accident. The objections should have been sustained. Apart from other reasons, the acquaintance of witness with plaintiff was too slight to make his opinion of any value. But in view of his answers the errors were not prejudicial. The witness did not undertake to express an opinion of her mental capacity; but simply stated what her general condition appeared to be on the occasions when he saw her before and after the accident. He testified to facts as he saw them. *City Pass. Ry. Co. v. Nugent,* 86 Md. 349, 360; *Zipus v. United Railways,* 135 Md. 297, 301. The third, fourth and fifth exceptions were to questions asked the attending physician. The objection was that he was not an expert on mental diseases. But apart from the liberty allowed in the examination of medical witnesses, the witness testified that he had studied and was specially interested in this branch of his profession. There was no error in the rulings. The sixth exception was to permitting a relative to testify that while plaintiff was in bed she complained of headaches. No error. The seventh exception was to permitting witness, who had testified without objection to the mental condition of plaintiff, to say whether the condition she had testified to was the same at the time plaintiff signed a statement offered in evidence by defendant. No error.

The real controversy in this case was as to the ruling on prayers in the eighth exception.

The plaintiff offered two prayers, both of which were granted, and the defendant fifteen, of which the fifth, sixth, eighth and fifteenth were granted, and the first, second, third, fourth, seventh, ninth, tenth, eleventh, twelfth, thirteenth

and fourteenth were rejected. The reporter is requested to set out all the prayers.

While plaintiff alleged in her declaration, as part of the negligence of defendant, that defendant failed to give any warning of the approach of the train to the crossing and offered some testimony to support the allegation, the evidence to the contrary was so overwhelming that the claim on that ground was practically abandoned. On the other hand defendant attempted to show contributory negligence on the part of plaintiff in that she failed to warn her husband of the approach of the train and to protest against his driving on the track, but there was no evidence to support these charges. The real contention of plaintiff, as appears from the record, was that after the automobile was driven on the track it became stalled at a time when the train was far enough from the crossing to have enabled the defendant, by the exercise of ordinary care, to have discovered plaintiff's peril and to have avoided the accident. That is, she invoked the doctrine of "last clear chance." There was evidence sufficient to take the case to the jury on this point, although the evidence to the contrary was very persuasive.

On the part of the defendant the real contentions were: (a) That the doctrine of "last clear chance" was not applicable to this case because when the automobile went on the track and the plaintiff was first in peril, the train was so near the crossing that defendant's employees could not by the exercise of ordinary care have stopped the train in time to have avoided the accident. Defendant's testimony supported this contention, but plaintiff offered testimony tending to prove the contrary, and it was enough to take the case to the jury on that point. (b) That there was no evidence that defendant's employees had *actual* knowledge of plaintiff's peril in time to have avoided the accident. That contention is supported by the record, and appellant strongly argues that the court should have withdrawn the case from the jury on that ground. (c) That the evidence so clearly showed that plaintiff had time to escape after the automobile became

stalled, that the court should have declared as a matter of law that it was a case of concurrent negligence.

The basis of defendant's contention (b) is that to hold on the facts of this case that anything short of *actual* knowledge by defendant's servants of plaintiff's peril would make applicable the doctrine of "last clear chance" would be contrary to the decision in *Neubeur's Case*, 62 Md. 391, where at page 398 Judge Alvey said: "The general principle is, that where both parties by their negligence directly contribute to the production of the accident, neither has a right to recover of the other for injuries sustained thereby. But there are exceptions to this general rule; and in cases like the present, the exception is, that if the defendant, or those acting for it, had become aware of the perilous situation of the plaintiff, though that peril had been incurred by the negligent or even reckless conduct of the plaintiff, yet the defendant or its agents would be bound to use all reasonable diligence to avoid the accident. But in order that this qualification of or exception to the general rule may be successfully invoked by the plaintiff, he must show knowledge on the part of the defendant, or its agents, of the peril in which he, the plaintiff, was placed, and that there was time after such knowledge, within which to make the effort to save him from the impending danger."

Defendant insists that the language quoted excluded the idea of holding the defendant responsible, under the "last clear chance" doctrine, because the defendant or its agents might have discovered plaintiff's peril by the exercise of ordinary care.

This identical point was made in *Consol. Ry Co. v. Armstrong*, 92 Md. 554, and in *Payne, Director General etc. v. Healey*, 139 Md. 86. In the *Armstrong* case, *supra*, this court, in an opinion by Judge Schmucker, upheld prayers which instructed the jury that if they found the plaintiff guilty of contributory negligence, that would not disentitle him to recover, if the defendant's motorman could have avoided the accident by the exercise of due care after he saw or ought to have seen the plaintiff's peril. The appellant

in that case cited the *Neubeur Case, supra,* as containing a statement of the views held by the court on this subject prior to more recent decisions. Commenting on this contention, Judge Schmucker said: "The fact, however, is, that long prior to the decision of that case (*Neubeur*) the use of precisely the same form of modification of the general doctrine (of contributory negligence) as that employed in two prayers now under consideration had been definitely sanctioned by this court in *N. C. R. v. Price,* 29 Md. 436; *B. & O. R. Co. v. Trainor,* 33 Md. 554; and *Klipper v. Coffey,* 44 Md. 128, and it was declared to be 'the settled law of this state' in the case of *B. & O. R. Co. v. Mulligan,* 45 Md. 494. The modification may be regarded as having originated in the cases of *Davis v. Mann,* 10 Meeson & Wels., 546, and *Tuff v. Warman,* 94 *Eng. Com. Law Reps.,* 573, both of which were cited with approval in *Price's* and *Mulligan's Cases, supra.* * * * The difference between the modification of the general principle recognized as proper in *Neubeur's Case* and that sanctioned by this court in the recent cases is simply that in the former case the defendant was held liable if he could, by the exercise of reasonable care after he became aware of the plaintiff's peril, have averted the accident, and in the latter cases he was held liable if he could have prevented it after he became, or ought to have become aware of the peril. There is no difference in principle between these two forms of instruction to the jury, for it cannot be seriously contended that when the defendant is in a position from which he ought to see or by the exercise of reasonable care could see the plaintiff's peril, he may avert his face or close his eyes and not see it and then escape liability for an injury resulting from such conduct on his part. As was said by this court in *Cooney's Case,* 87 Md. 268: 'The law will not permit the loss of life or limb or even property to be deliberately and carelessly inflicted, when it could by reasonable care and caution be averted, merely because the injured person was negligent.'" The *Armstrong* case, *supra,* was cited with approval in *Payne, Director General etc. v. Healey,* 139 Md. 86, 97, and the same conclusion reached.

But the appellant urges that these were cases of accidents at street crossings in cities, and cites *Westerman v. United Railways Co.,* 127 Md. 231, and other cases, to the effect that a different degree of care and responibility is required of railroad companies in using the streets of a municipality from that required in the open country. This, however, is a difference in degrees and not in principle. The difference is merely in what constitutes ordinary care in the respective circumstances.

Defendant's contention (c) cannot be sustained. This case is a striking illustration of the rule stated in *Cook v. Balto. Traction Co.,* 80 Md. 558, and in *B. & O. R. Co. v. Hendricks,* 104 Md. 76, 84, viz: "Where the nature and attributes of an act relied on to show negligence contributing to an injury sustained can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as matter of law."

Bearing in mind the principles above described, the rulings on the prayers may be briefly disposed of.

Plaintiff's first prayer correctly presented to the jury the issue of "last clear chance." Her second prayer was the ordinary damage prayer. Defendant's first, second, third, fourth, and fourteenth prayers asked for a directed verdict in favor of defendant and were properly refused. Its granted prayers presented the case to the jury from the defendant's point of view at least as favorably as it was entitled to ask. Its seventh, tenth, and thirteenth prayers ignore the last clear chance doctrine on which the case was tried. Such part of the seventh prayer, if any, as is good, is covered by its sixth prayer, which was granted. There was no evidence to support the latter parts of the tenth and thirteenth prayers. Its ninth prayer was covered by its fifteenth prayer, and its eleventh and twelfth prayers were covered by its fifth and fifteenth prayers.

*Judgment affirmed, with costs to appellee.*