No. 12,588.

MARGARET ROMBACH, TUTRIX, VS. CRESCENT CITY RAILROAD COMPANY.

In an action for damages received from a collision between a cart and a street car, moving side by side in the same course, with a short space between them (one can not strike the other if each remains in its direction). It being evident that the car did not turn, but that the cart was turned so that it struck the side of the car, the presumption of negligence was not against the street car.

To recover it was incumbent upon the plaintiff to prove that the collision was caused by the negligent acts of the defendant. On the contrary, it appears that it proceeded from the incautious act of the driver in pulling his horse to the left.

*Held:* That the injury was not caused by defendant's negligence and that there is no ground for deciding that the unanimous verdict of the jury and the judgment of the court pronounced thereon were erroneous.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*O. B. Sansum* for Plaintiff, Appellant.

*Farrar, Jonas, Kruttschnitt & Gurley* for Defendant, Appellee.

Argued and submitted April 19, 1898.
Opinion handed down May 2, 1898.

The opinion of the court was delivered by

BREAUX, J. This was an an action for damages received from a collision. Plaintiff sued for damages as tutrix of her minor son, Jacob Rombach, aged about fourteen years, who was injured in an

accident.   It appears that his oldest brother was sick and unable to deliver ice to customers of the mother.    The little fellow injured asked of his mother the permission, with another youth older than he was, to receive the ice from the factory and take it to those to whom the oldest brother usually dealt that article of merchandise.    The boys were driving the horse and small ice cart upon defendant's up-town rails on Tchoupitoulas street, at about half past eight o'clock in the morning.   About midway of that street (Tchoupitoulas), between Delachaise and Aline streets, in this city, one of the defendant's electric cars collided with the ice cart and tilted the cart over, breaking one of the shafts and throwing the ice down into the street and breaking the left arm of plaintiff's son.   The rear end of the cart struck the side of the car on the left, in rear of the "grab handle" attached to the body of the car for the convenience of passengers in entering the car.   The evidence discloses that the fender of the car projected two and one-half feet in front and extended on each side of the centre line of the car, as far as the platform in front of the dashboard.   The front, or dashboard, was as wide as the body of the car, and the platform also was as wide as the car and projected about three feet from the body of the car. The cart measured two feet ten inches from the centre of the hub to the rear end of the tumbrel or the tailboard.

Previous to and at the time of the collision, the car was running at half speed and the horse was pulling the cart at half trot.

The plaintiff insisted that her cart had almost entirely passed from the track when the motorman turned on the power, increased the car's speed, and thereby caused the collision and the injury; that the driver of the cart heard the gong and the advancing car and immediately turned the horse off the car track, but not quickly enough to escape the injuries complained of.

The case was tried before a jury.   The verdict was for defendant. The judge overruled the application for a new trial and gave judgment against the plaintiff.   She appealed.

Beyond all question, if plaintiff's cart and horse were being driven up the street and the car people did not give it ample time to move out of the way, the defendant is responsible in damages for the injury, but this, so far as we can discover here, is not the case.   If it had been, the front part of the car would have been the first to come in collision with the cart.   We have seen it was not the front that

struck the car; but the cart collided with the car some five and a half feet from the front of the car. The evidence shows that the car was of equal width from end to end, including the fender in front. It therefore becomes manifest the outer end of the car and the sides being parallel, after the cart had cleared the track it must have made a backward motion. Had it remained in place, after it cleared the five and a half feet on the side, the car being of equal width from one end to the other, it would have passed without touching the cart. The cart must have deviated. The car and the cart were going in the same direction. One of the wheels was, plaintiff states, on the railroad track. The horse was pulling toward the river. We gathered from the evidence, however, that the horse and wagon were not in front of the car as alleged by plaintiff, but on the side running in the same direction with the car, in a direction slightly oblique from the car; that when opposite to the car the horse turned in the direction of the river and thereby the cart was made to strike the car, as it did. Had the cart been in front of the car, as contended by plaintiff, with one wheel inside of the up-town car track and as witnesses for plaintiff have testified (if its direction was slightly oblique with the car's course) the right hand wheel or the hub would have struck the car. (The wheel and its hub projected a number of inches from the side of the cart.) If, on the other hand, the direction had been more at right angle from the line of the track, the front of the car would have struck the cart.

Five and a half feet of the car had been passed without colliding. Had there been no veering of one or the other there would not have been an accident. The remaining length of the car would have been passed without collision. Had they traveled toward each other the side of the cart would have come in collision with the side of the car. This was not the situation; they were not inclining toward each other. The side of the car was struck by the right hand end of the cart. In what way then did the end of the tumbrel strike the car? The course of the latter (the car) was not to the side, right or left, but straight. The blow must have come from the cart as it changed direction to the left from the car. That this actually happened was made evident, we think, by the print of the blow on the side of the car, and the broken end of the tumbrel of plaintiff's cart. If the driver pulled to the left even a very small distance it would turn the cart diagonally to the car and bring the end in con-

tact with the car. In that case the cart would be the offending force, and not the car, following a direct line.

This view, we think, is sustained by the weight of the testimony. The distance between the cart and the car running in the same direction was very little. The limited space between the two at the moment of the accident does not change the principle which we think should govern. In all cases when the cartman deviates and departs from the track, and his cart and the car are running advancing side by side, he is presumably negligent if he chooses to turn his cart so as to strike the car, and this whether the tumbrel of his cart be short or long. After the cart is no longer in the car's range a turn of its wheels gives rise to the unavoidable inference that the collision came from the cart's change in direction. The plaintiff in support of her claim sought to prove that a dray coming toward the cart from an opposite direction at the moment of the accident so encumbered the street that it prevented the driver of the cart from getting away entirely from the car track. There was unquestionably a dray near at the moment of the accident. The witnesses disagree as to the obstruction by this dray. Several stated that it was not near enough to interfere with the cart in the least. The jury's verdict sustains that evidence. It is particularly within the province of the jury to weigh the facts of the controversy. We have frequently heard it said that juries are in their findings very much inclined against corporations. We do not give great credence or importance to such utterances, but none the less we are of opinion that a jury would not hastily conclude in an action for damages to a boy in the service in which this boy was engaged, with his mother's permission, that he was not obstructed or stopped in his course, if, in reality, he was in any way stopped. As plaintiff in suit and as appellant from the verdict of a jury to which the cause was left on her motion, she is bound to explain and prove to the court her right before she can be allowed to have the verdict reversed. While it is true that railroads have not a monopoly of their tracks, and that it is not in their absolute use to the exclusion of vehicles, yet in order to hold them for damages their negligence must be proved. It was not established to the satisfaction of the jury and of the judge of the District Court, nor to ours. In analyzing the facts and seeking to comprehend just how this accident occurred we found that the unexplained collision by the cart with the side of the car, and not with the

front of the car, was a complete bar to the conclusion that the injury arose from negligence on the part of those who were manning the car.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is hereby affirmed.