STATE OF MARYLAND use of MARY CAREY et al. *vs.* THE CUMBERLAND AND WESTERNPORT ELECTRIC RY. CO.

*Contributory Negligence of Person Getting Down from Wagon to Track of Electric Railway Without Looking.*

A wagon stopped on a country road about two feet from the track of an electric railway running along the side of the road. One of the two men in the wagon got out, stood on the hub of a wheel, with his back towards the track, talking with the other man for two minutes, and then stepped down towards the track and was struck and killed by a car coming from behind, which blew a whistle just before the collision. Before stepping down he did not turn to see if a car was approaching, which he could have seen if he had looked. *Held*, that the contributory negligence of the deceased was such as to prevent a recovery against the railway company of damages for the death so occasioned.

*Held*, further, that the doctrine of the last clear chance is not applicable in this case, since there is no evidence tending to show that the motorman of the car saw or could have seen the deceased start to step down from the hub of the wagon towards the track in time to stop the car before it struck him, or to give a more timely warning than the whistle which he blew.

*Decided November 13th, 1907.*

Appeal from the Circuit Court for Allegany County (ROBERT R. HENDERSON, J.)

The cause was argued before BRISCOE, BOYD, SCHMUCKER, BURKE and ROGERS, JJ.

*Albert A. Doub* and *David J. Lewis*, for the appellant.

*Benjamin A. Richmond* (with whom was *D. James Blackiston* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This suit was brought by the State for the use of the equitable appellants to recover damages for the death of their

husband and father, James Carey, who was struck and killed by an electric freight car of the appellee. On the trial of the case below the Court, at the close of the plaintiff's evidence, granted two prayers offered by the defendant directing the jury to render a verdict in its favor. The first prayer was based upon the want of evidence legally sufficient to entitle the plaintiff to recover and the second upon the ground that the undisputed evidence for the plaintiff showed that the deceased had been guilty of negligence directly contributing to the occurrence of the accident which caused his death. A verdict was rendered in accordance with the Court's instruction and a judgment for the defendant was entered thereon from which the present appeal was taken.

It appears from the record that the fatal accident occurred about four o'clock in the afternoon of a clear day a short distance south of Lonaconing on a public road leading into that city. At and near the place of the accident the tracks of the Cumberland and Pennsylvania Railroad run along the right side of the wagon road and those of the appellee run along its left side. But one witness, George J. Ternant, testified to the circumstances of the accident and from his testimony we gather the following facts.

A short time before the accident Carey, while walking north along the public road toward Lonaconing, was overtaken by the witness, Ternant, in a delivery wagon and was invited to get into the wagon. He accepted the invitation and took a seat to the left of Ternant on the side of the wagon next to the tracks of the electric road. The wagon continued to go northerly along the public road until it reached a point about fifty feet south of a bridge which was being built or renewed by the Cumberland and Pennsylvania Railroad Company over George's Creek. Ternant then stopped the wagon to let Carey get off as the latter was near his home. Carey got out on the hub of the front wheel of the wagon on the side nearest the electric road's track for the purpose of alighting, but stood on the hub for about two minutes talking to Ternant who remained in the wagon. At the expiration of the two minutes,

as Carey was in the act of stepping down backwards from the wagon toward the tracks of the electric road, a freight car coming northerly thereon struck and killed him but did not strike the wagon.   At that time the workmen on the Cumberland and Pennsylvania bridge in front and to the right of the wagon were engaged in driving rivets with a pneumatic machine which made a "drumming noise."

The actual occurrence of the accident was described by the witness as follows, in his examination in chief.

"Q. What was Carey doing these two minutes?

A. He was standing on the hub of the wagon, looking in the direction of the bridge, and we were talking.

Q. Was he looking towards the bridge, you say?

A. Yes, and he was telling me how they were going to put in this new steel bridge.   He told me they were going to saw out the old bridge and put in a derrick, and move over the new bridge and about that time a car came on, and I turned around and I looked at the car, and he was in the act of leaving the wagon, and the car struck him, and knocked him past the horses.

Q. How far was the wagon from the rail of the trolley, the end of the hub?

A. Two feet.

Q. And you say he was standing, looking towards the bridge, with his foot on the hub?

A. Yes, sir.

Q. Now, in what position would that put his back, with regard to the oncoming freight car?

A. In a position about like this (illustrates.)

Q. Where would the car be?

A. Come from behind."   *   *   *

Q. Did you hear the car coming?

A. Never heard the car, no, sir.

Q. Did you hear the riveting?

A. Yes, they were riveting—when we first drove up there they were riveting.

Q. Did they continue to rivet?

A. I think they did.

Q. And you continued to talk?

A. Yes, sir.

Q. What whistles did you hear?

A. Didn't hear no whistle until I heard a sharp whistle, and I looked back, and the car was right on the wagon.

Q. You heard a sharp whistle and looked back, and then the car struck Carey?

A. Yes, sir.

Q. Did you hear the bell?

A. Never heard any bell, no sir.

Q. You heard no warning except the whistle?

A. No, sir, except the one sharp whistle.

Q. How far did the car run after it struck him?

A. About a length and a half of the car, 90 feet."

On cross-examination the witness described the occurrence as follows:

"Q. Now, Mr. Ternant, as I understand you the car track was running toward Lonaconing, and your wagon was standing opposite it?

A. Yes, sir, two feet from it.

Q. And Mr. Carey was sitting opposite to you, and said he wanted to get off?

A. Yes, sir.

Q. And then he stepped off, and got on the hub?

A. Yes, sir.

Q. And you were sitting, and he was standing on the hub talking to you?

A. Yes, sir.

Q. Here is the track, and here is the wagon going toward Lonaconing. Lonaconing is behind Mr. Richards there, and you were sitting on the right hand side, and this gentleman on the left hand side, and he stepped out of the wagon, and got on the hub, and you still sat with your back down the road, and he was facing you from the hub?

A. Yes, sir.

Q. And you were both looking across to the bridge? A. Yes, sir.

Q. And while he was standing there talking to you, then he started to step back, or move back?

A. No.

Q. You said he moved back toward the track, he stepped down?

A. He was standing on the hub, and in the act of getting off.

Q. He stepped down?

A. Yes, sir.

Q. And that threw his body out over the track, is that it?

A. In the position he was standing.

Q. Just then you heard a whistle blow, and just then he was struck?

A. Yes, sir." * * *

"Q. He had taken one foot off the hub and started out?

A. I think he had.

Q. Had his foot touched the ground when you saw it?

A. I don't know.

The witness further testified that the car could have been seen at least two hundred yards before it reached the wagon and that although Carey could not see it in the position in which he was standing on the hub, he could have seen it while standing there if he had turned around and looked. Both the witness Ternant and the plaintiffs' witness Kirkwood testified that the body of the car projected out over the track, the latter saying, when asked how far it projected, "About six inches I suppose." Ternant also said that Carey would have been struck by the car if he had remained standing upon the hub of the wagon. Frank Quinn testified for the plaintiff that Carey was about six feet tall, weighing about 170 or 180 pounds, but was not a fleshy man. The evidence also shows that Carey had lived for some years in the vicinity where the accident ocurred. There is no evidence as to the rate of speed at which the car was going when it struck Carey, other than the fact that it ran a length and a half, 90 feet after the collision before it stopped.

We are of the opinion that the case was properly taken from the jury. The evidence on behalf of the plaintiff, which for

the purpose of this inquiry must be taken as true, presents a clear case of negligence on the part of Carey directly contributing to the accident which caused his death. He was struck by the car while in the act of stepping down backward from the hub of the wagon wheel toward if not upon a railroad track but two feet distant from the wheel, without taking the slightest precaution to ascertain whether a car was approaching. He could have seen the car in time to save himself if he had simply turned around and looked for it. He must have been familiar with the proximity of the railway tracks to the public road as he resided in the immediate neighborhood. Furthermore he had been riding along the public road in full view of the railway track just before the happening of the accident which cost him his life. It has long been the settled law in this State that it is negligence *per se* for any one to attempt to cross the tracks of a railway without first looking and listening for approaching trains and stopping to look if the view be obstructed, and if he neglect these precautions and is injured by collision with a passing train, which he might have seen if he had looked or heard if he had listened, he will be presumed to have contributed to the occurrence of the accident and unless that presumption be overcome he cannot recover for the injury. That this proposition applies to attempts to cross suburban electric railways has been held by us in *McNab v. United Railways*, 94 Md. 727; *Hatcher v. McDermott*, 103 Md. 78, and other cases. It must upon principle be held applicable also to attempt to go upon a railway track or so near to it as to come into collision with a passing train or car. If the injured party in such a case is debarred by his negligence from recovering damages for the injury it necessarily follows that no suit can be maintained for the benefit of his representatives if his injury prove fatal.

The counsel for the appellant contended with much ability, at the hearing of the appeal, that the case came within the operation of the doctrine of the last clear chance, upon the theory that the position of Carey while standing upon the hub was one of peril in which the motorman of the approach-

ing car could, by the exercise of proper diligence, have seen him in time to have saved him from its consequences by giving timely warning or stopping the car. If his position on the hub was a perilous one, as to which we express no opinion, it was not the peril of that position, certainly not that peril alone, from which he lost his life. He was not struck while standing upon the hub but while he was voluntarily and deliberately engaged in the very negligent act of getting down backward from the hub toward the track without even looking to see if a car was coming. There is no evidence in the record tending to prove that the motorman saw or could have seen Carey start to step down from the hub of the wagon toward the track in time to stop the car before it struck him or to give a more timely warning than the whistle which he blew.

Under these circumstances with clear proof of this distinct act of negligence on his part contributing directly to the accident it would have been improper for the learned Judge below to send the case to the jury to permit them to engage in speculation as to whether or not Carey would have been in peril if he had remained on the hub or whether he could not have stood up in safety in the intervening space between the wagon and the railway track, as the car passed by.

The record also contains an exception to the rejection of certain testimony offered on behalf of the plaintiff touching the measure of damages to be allowed in the event of a recovery but, as we have held that the Court was right in directing a verdict for the defendant, it is obviously unnecessary for us to consider that exception.

The judgment appealed from will be affirmed.

*Judgment affirmed with costs.*