Rosa Julia Miranda, etc., Plaintiff and Appellee, v. Porto Rico Railway, Light & Power Co., Defendant and Appellant.*

No. 4684.   Argued November 19, 1929.—Decided July 24, 1931.

---

* Note.—On appeal to the U. S. Circuit Court of Appeals for the First Circuit, this decision was affirmed. See 62 F. (2d) 479; cert. den. 289 U. S. 731.

*J. H. Brown, C. Ruiz Nazario,* and *G. E. González* for appellant.
*Guerra-Mondragón & Soldevila* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

This is an action for personal injuries, alleged to have been

caused by the negligence of the defendant, in the operation of one of its street cars. The early history of the case may be found in *Miranda* v. *P. R. Ry., Light & Power Co.*, 31 P.R.R. 738, where a judgment for plaintiff was reversed. Defendant now appeals from a second judgment in favor of plaintiff. The present appeal involves the doctrine of last clear chance.

The accident occurred within the Municipality of San Juan about midway between Stops 19 and 20 of defendant's street car line in a thickly populated section. The distance between these two stops was short. Stop 19 was in front of the Boys' Charity School; Stop 20 at the corner of Hippodrome Street and Ponce de León Avenue. There was a switch at Stop 19. Adjacent to the Boys' Charity School was a chapel. Beyond this was a vacant lot. Between this lot and the corner at Stop 20 there were four houses, including one on the corner. In front of the two houses nearest the chapel was a fence. Between this fence and the traveled portion of Ponce de León avenue, lay the track of the defendant company.

There were no sidewalks. For more than a quarter of a century pedestrians had used a path between the fence and the street car track in going from one stop to another and in going to and from the chapel, and to and from the houses between the chapel and the street corner. The narrow strip between the street car track and the fence was not more than a meter in width. One witness said that it was not more than 45 or 50 centimeters. How much of this intervening space was occupied by passing street cars, and how much was left between the sides of such cars and the fence, does not appear. There can be no doubt about the dangerous character of the place.

The house and fence nearest the chapel may be designated for convenience as the Barletta house and fence. At about eight o'clock in the morning plaintiff left the Barletta house, passed through the front gate and, without looking to

her right toward Stop 20, turned to her left toward Stop 19 and walked along the path between the Barletta fence and the track. At or near the corner of the Barletta fence she was struck from behind by a street car. Within a few feet of the spot there was a post with a sign warning motormen to reduce speed.

The track between Stop 20 and the place of the accident was straight, and the view was unobstructed. When plaintiff passed through the gate and entered the narrow passageway between the fence and the track, the car, according to one witness, Vergne de la Concha, was only five or six meters away. In a statement made before the district attorney just after the accident, the same witness fixed this distance as within two car-lengths. The power had been cut off and the car was running slowly downgrade but little faster, according to another witness, than a man can walk. The motorman did not see the plaintiff before she was struck by the car. He did not ring the bell nor give any other warning, nor make any effort to stop the car until after the accident. He was unable to offer any explanation as to how the accident had occurred. The car could have been stopped at any time within a distance of one meter, or as estimated by one witness, within a *"vara."* It was not stopped until after the four wheels on the left side had passed over plaintiff's right leg, until after the conductor and inspector standing on the rear platform, on looking to the rear through a window in the back of the car, had seen plaintiff on the ground, and until after the inspector had signalled the motorman. The distance between the spot where plaintiff lay and the rear platform of the car was estimated by the conductor and by the inspector at three or four meters, by another witness at eight or ten meters, and by others at fifteen or twenty.

Pedro Vergne de la Concha testified that he was seated in the second seat from the front on the left-hand side of the car and that he saw plaintiff when she passed through

the gate and turned into the path between the street car track and the Barletta fence; that she was walking close to the fence; that witness did not see her when she was struck by the car; that no bell was rung; that the place was dangerous, very narrow; that it would have been possible for the car to pass plaintiff if she was close to the fence; that the place is dangerous but not so much so that injury in passing a person was inevitable; that in order to avoid accident a warning is necessary; that when witness and others heard the girl scream, they called to the motorman and he stopped the car within five or six meters.

On cross-examination, this witness (an ex-employee of defendant) said that the car was within five or six meters from the gate when plaintiff passed through it; that she was looking ahead; that when she passed through the gate she did not look toward the car; that her back was turned toward witness and he did not notice whether she looked in the direction of the car; that witness did not believe an accident was about to happen because plaintiff *"iba bien."* Asked whether the car would have passed her without touching her at the spot where she was walking, the witness answered: "I believe so. It is a pretty narrow place, dangerous, but an accident can be avoided." The next question was, "But you believed that there was no danger?" Witness answered, "It is customary to ring the bell on passing that place, in order to give warning, because it is very narrow and one who is a little careless may meet with an accident." Asked again whether he believed that plaintiff was in a position of danger, the witness answered that the place was naturally dangerous, because it was narrow.

Plaintiff herself on cross-examination, after stating that the space was narrow, admitted that one could remain therein without being touched by a passing car.

At the first trial counsel for plaintiff were intent upon showing that while the place was dangerous, yet if a bell had been rung plaintiff might have escaped injury. This

attitude may or may not account in a measure for the admissions made by plaintiff on cross-examination. At the second trial the stenographic record used on the first appeal was introduced in evidence and but a single witness was put upon the stand. It is remarkable that, notwithstanding the manner in which the case was twice tried, facts sufficient to bring it within the doctrine of the last clear chance were so well established. América Barletta testified at the first trial that the distance between her front step and the gate was about two meters, and that the space between the track and the fence was less than half of that distance in width. At the second trial the new witness testified that this space was not more than half a meter in width. His testimony is not directly contradicted by that of any other witness. There is no testimony as to how much of this space was covered by the overhang of the car.

If the testimony of the one witness who took the stand at the second trial be true, the clear space between the side of a passing car and the fence would be something less than twenty inches, even if the car were no wider than the space between the rails. If, as estimated by Miss Barletta, the space between the fence and the rail was something less than a meter in width, and if approximately one-half of this space was taken by the overhang of the car, the result would be the same. This "would give play for the doctrine of 'last clear chance.' " *Starck* v. *Pacific Electric Ry. Co.*, 172 Cal. 277.

Our decision, however, does not depend upon any such unstable protasis as that involved in making an allowance for the overhang of the car. It was not incumbent on plaintiff "to show that her inability to escape from the threatened danger was a physical impossibility." *Darling* v. *Pacific Electric Ry. Co.*, 197 Cal. 702, 707.

In *State* v. *United Rwys.*, 143 Md. 112, several persons were standing on the highway between a motor bus and the track. One member of the group standing with his back to the track was struck by a passing car. ". . . If the space

between the automobile and the tracks was as narrow as some of the witnesses testified,. it was only five feet wide, and of that space about one and a half feet was taken up by the overhang of the car, leaving a fairly safe zone only three and a half feet wide.'' The evidence was held insufficient to show as a matter of law that the negligence of deceased was the proximate cause of the accident.

In *Chunn* v. *City and Suburban Ry. Co.*, 207 U. S. 302:

''The distance between the inner rails of the two tracks was seven feet ten inches. The steps of the cars projected two feet two inches beyond the tracks, leaving, when two cars passed each other at this point, a clear space between them of three feet six inches, so that, as one of the plaintiff's witnesses said: 'there was ample room to stand if you were thinking what you were doing . . .'

''It was a place which, in itself, was perfectly safe, unless made otherwise by the manner in which the defendant used the east track for the passage of cars.''

The Court said:

''There was room to stand between the two cars and escape contact with either. But the margin of safety was narrow and left little allowance for the infirmities of mankind . . . . The same witness (himself standing on the platform beween the tracks) who said that 'there was ample room to stand if you were thinking about what you were doing' also said: 'I realized that I would have to hold myself strictly in the center of the two tracks.' . . . The three feet, six inches width of the clear platform cannot fairly be considered without taking into account the dangers which infested the borders upon each side. A platform which would be wide enough for a child to walk in safety from the base of the Washington Monument to the steps of the Capitol, if elevated to extend from the summit of one to the dome of the other, would imperil the passage of the man of steadiest nerve.''

The Court held that plaintiff was not as a matter of law guilty of negligence. It also said:

''Nor is it clear that, even if the plaintiff was not free from fault, her negligence was the proximate cause of the injury. If she carelessly placed herself in a position exposed to danger, and it was discovered by the defendant in time to have avoided the injury by

the use of reasonable care on its part, and the defendant failed to use such care, that failure might be found to be the sole cause of the resulting injury."

Certain provisions of defendant's franchise seem to distinguish between defendant's right of way or present right of way and defendant's private right of way or present private right of way. Other provisions indicate the existence of a right of way over the public highway and impose certain duties upon defendant where its tracks rest upon such highway.

Whether or not the track between Stops 19 and 20 was in fact laid upon an untraveled portion of a public thoroughfare is not a pivotal point.

If the track was so laid, the case falls *a fortiori* within the rule laid down in *State v. United Rwys. Co., supra:*

"That the character of construction necessary to the operation of its railway system by the company in rural and suburban sections makes it impracticable to use for general traffic that part of the road occupied by its tracks, does not relieve it of the obligation of using ordinary care in the operation of such system, to avoid injury to persons in the lawful use of that part of the road used for general traffic."

If the track was not so laid, the private crossings, referred to in our previous opinion (one of which was quite near the spot where the accident occurred), the Boys' Charity School at Stop 19, the close proximity of the traveled portion of the road on one side, and the dangerous character of the path used as a sidewalk on the other, were more than enough to establish a duty on the part of defendant to keep a lookout.

The accident did not occur at an unfrequented spot in the open country where there was no reason to anticipate the presence of trespassers on defendant's right of way. Defendant's car, about to enter the switch at Stop 19, was running at minimum speed in obedience to the warning posted by defendant at the entrance. There was no car

headed in the opposite direction waiting at the switch. The stopping of defendant's car for a moment at the giving of a signal and the further reduction of speed necessary to enable plaintiff to reach a place of safety, would not have delayed the running of defendant's car to any appreciable extent.

Plaintiff was either a traveler on the highway or a licensee on defendant's right of way. She was not a trespasser. For many years defendant had been running its cars by the Barletta house and was fully aware of the manner in which the narrow space between the track and the fence was used by the public. It was defendant's duty to anticipate the presence of pedestrians on the pathway, to keep a lookout for them, and to use reasonable care to avoid injuring them. *Vidal* v. *P. R. Ry., Light & Power Co.*, 32 P.R.R. 707; *Teakle* v. *San Pedro L. A. & S. L. R. Co.*, (Utah) 90 Pac. 402; *Chesapeake & O. Ry. Co.* v. *Corbin's Adm'r*, (Va.) 67 S.E. 180; *Dent* v. *Bellows Falls & S. R. St. Ry. Co.*, 116 Atl. 83.

When plaintiff passed through the gate and turned into the narrow space between the track and the Barletta fence her negligence culminated in a situation from which she had no adequate means of escape. If immediately thereafter she had discovered the close proximity of the approaching car, perhaps she might have turned back and reached the gate before the car passed that point. After taking the first few steps along the path this avenue of escape was cut off. Plaintiff's position then became one of obvious and imminent peril. It was an actual peril from which injury was not unlikely to result. The probability of such injury, if defendant did not make proper effort to avoid it, would have been at once apparent to any person of ordinary prudence. 45 C.J. 992, sec. 543. The possibility that plaintiff, if possessed of sufficient presence of mind, might have avoided injury by standing close against the fence and per-

mitting the car to pass was not enough to divest her position of its dangerous character. Her negligence must be deemed to have culminated and ceased when there was yet time for defendant, by the use of ordinary care, to have avoided the accident. Thus stripped of its concurrent and contributory character, plaintiff's negligence became a remote instead of a proximate cause, and the district court did not err in finding that defendant had a last clear chance to avoid the injury, and that its continuing, subsequent, and supervening negligence, rather than that of plaintiff, was the proximate cause of such injury.

In 45 C.J. 994, section 545, we find the following:

"The courts are not in entire agreement as to whether there can be a recovery by one who could, by the exercise of ordinary care, have extricated himself or his property had he been aware of the danger, but who fails to do so because he is unconscious of the peril. While there is authority to the contrary, it is generally held that recovery may be had in such cases. In one jurisdiction, however, it is held that, while there may be a recovery in such cases if plaintiff remains passive and does nothing materially to change the situation of exposure by active conduct not marked with ordinary care, there can be no recovery if plaintiff, after exposing himself to peril, instead of permitting the fixed condition to remain unchanged, continues as an active agent in producing the conditions under which his injury was received until it becomes too late for defendant to avoid the accident."

In a footnote there is a quotation from the opinion in *Nehring* v. *Connecticut Co.*, 84 Atl. 301, as giving the reason for the rule in the one jurisdiction.

In *Vidal* v. *P. R. Ry. Light & Power Co., supra,* we recognized a possible distinction between active and passive negligence, when we said that: "despite the duty of defendant to avoid injury, a person may not recover if his own negligence continued actively up to the moment of the accident."

The instant case comes within the third, as well as within the second of the several groups of cases, according to the classification made in the *Nehring* case.

See also: *Salt Lake & U. R. Co.* v. *Trumbull*, 246 Fed. 806; *Bremmerman* v. *Georgetown & T. Ry. Co.*, 273 Fed. 342; *Standard Oil Co.* v. *McDaniel*, 280 Fed. 993; *Chesapeake & O. Ry. Co.* v. *Corbin's Adm'r, supra; Locke* v. *Puget Sound International Ry. & Power Co.*, 171 Pac. 242; *State* v. *United Rwys. Co., supra; Rawitzer* v. *St. Paul City Ry. Co.*, 100 N.W. 664; *Colorado Springs & I. Ry. Co.* v. *Merrill*, 149 Pac. 843; *Cavanaugh* v. *Boston & M. R. R.*, (N. H.) 79 Atl. 694; *Darling* v. *Pac. Electric Ry. Co., supra,* the dissenting opinion by Chief Justice Beatty, in which Mr. Justice Van Dyke concurred, in *Green* v. *Los Angeles, etc., Ry. Co.*, 143 Cal. 48; *Berguin* v. *Pacific Electric Ry. Co.*, 203 Cal. 116 and *Mihelish* v. *Butte Electric Co.*, 281 Pac. 540.

Plaintiff's obliviousness of her peril is not discussed by appellant. Whether or not we shall follow as far as some of these cases go, and whether or not we shall adopt the Connecticut distinction between active and passive negligence are questions that may be left to the future. The fact remains, however, that after taking the first few steps along the path, plaintiff did nothing to increase the danger nor to change the situation by active, negligent conduct. Thereafter every step was taking her toward a place of safety beyond the end of the Barletta fence. If the motorman had been looking ahead, he would necessarily have realized that plaintiff was unconscious of danger and would not, if she could, step aside. Up to the moment of impact, he could have stopped his car in time to have avoided the crushing of plaintiff's leg by the wheels. Hence, if we are to follow the general trend of recent decisions, plaintiff's negligence would be deemed to have ceased, and that of the motorman to have been the proximate, efficient cause of the accident, even if there had been no fence to prevent plaintiff from stepping out of the way of the car.

Appellant's theory of the case is that when plaintiff reached the gate the car was already passing that point and

that plaintiff was struck and thrown to the ground by the side of the car either at the gate or near the gate while walking beside the car between the same and the fence. This question of fact was twice decided adversely to defendant by two different trial judges, and we find no such manifest error in this regard as to require a reversal. At the first trial plaintiff introduced in evidence four photographs. They are mentioned but twice in the brief for appellant. First, appellant refers to them as evidence in support of the contention that the court below erred in finding that the place where the accident occurred was a public road. Later, appellant relies on Exhibit ''D'' to show that the track was straight between the Barletta house and Stop 20, and that plaintiff when she passed through the gate could have seen a car coming toward her from Stop 20. These photographs, we think, tend to support the findings of the district judge and the conclusions reached herein.

What we have said disposes of the case, unless it can be shown that the doctrine of last clear chance is not applicable to the facts. This brings us to appellant's contention that the district court erred in holding that plaintiff's negligence did not preclude her recovery because the conduct of defendant's employee was the proximate cause of the accident, and in finding that defendant had a last clear chance to avoid the accident.

More specifically the points presented are that actual knowledge by defendant of the danger to which plaintiff was exposed must be shown; that the contributory negligence of plaintiff was continuous, active and concurrent; that even though defendant had discovered plaintiff's peril there could have been no recovery, and that the complaint did not state facts sufficient to justify an application of the doctrine of last clear chance.

In support of the contention that the doctrine of last clear chance should be limited to cases where plaintiff's peril was

actually discovered in time to avoid injury, appellant quotes from:

Davies v. Mann, 10 N. & W. 546;
An Article in 3 Harvard Law Review, 263;
20 R. C. L. 141, 142 and 143;
Wheelock v. Clay, 13 F. (2d) 972:
Walker v. East St. Louis & S. Ry. Co., 25 F. (2d) 579;
Bourrett v. Chicago & N. W. Ry. Co., 132 N. W. 973, 36 L. R. A. (N. S.) 957;
Keefe v. Chicago & N. W. Ry. Co.; 54 Am. St. Rep. 542, 60 N. W. 504;
Northern Pac. Ry. Co. v. Jones, 144 Fed. 47; 20 R.C.L. 143.

In *Northern Pacific Ry. Co.* v. *Jones*, the Circuit Court of Appeals for the Ninth Circuit concedes that "There was no evidence in the Ives case that the plaintiff's intestate was seen by those who were managing the train in time to have avoided the accident."

Before Jones was overtaken by a train, running at from six to eight miles an hour, he had "walked upon the railroad track a distance of more than half a mile without once looking back or stopping to listen for an approaching train." The court said:

"The doctrine of 'the last clear chance' . . . originated in Davies v. Mann in which it was held that the plaintiff's want of ordinary care in that case did not constitute contributory negligence, because it was a remote cause or mere condition of the injury, and did not proximately contribute to it, and because the negligence of the defendant arose subsequently to that of the plaintiff, and the latter's negligence was so obvious as to have been *discoverable* by the exercise of ordinary care. That doctrine has no application to a case where the plaintiff voluntarily places himself in a place of danger *from which he has present means of escape,* and continues there without exercising precautions which an ordinarily prudent man would exercise. We have nothing here to do with the law applicable to a case where the injured person is found in a place of danger, as upon a railroad trestle, from which he is powerless to extricate himself on the approach of a train, and where his situation is discovered, *or ought to have been discovered,* by those in charge of the train." (Italics ours.)

The *Wheelock* and *Walker* cases are from a line of decisions by the Circuit Court of Appeals for the Eighth Circuit. The entire series rests upon a *dictum* in *Denver City Tramway Co.* v. *Cobb*, 164 Fed. 41. There is no reasoning in any of these decisions (unless it be later than the *Walker* case) in support of the *dictum*.

In the *Cobb* case the court gave as one of two reasons why the doctrine of last clear chance was inapplicable:

"Second.—The exception does not apply where the plaintiff's negligence or position of danger is not discovered by the defendant in time to avoid the injury."

In support of this statement the court cited:

Chuan *v.* City & Suburban Ry. Co., supra;
Illinois Central R. Co. *v.* Ackerman, 144 Fed. 959;
Fonda *v.* St. Paul City Ry. Co., 71 Minn. 438, 451, 74 N. W. 166;
Alger, Smith & Co. *v.* Duluth, etc. Co., 93 Minn. 314, 101 N. W. 298;
Bennichsen *v.* Market St. Ry. Co., 149 Cal. 18, 84 Pac. 420;
Cullen *v.* Baltimore & Potomac R. R. Co., 8 App. D. C. 69;
Rider *v.* Syracuse Rapid Transit Co., 171 N. Y. 139, 63 N. E. 836, 58 L. R. A. 125.
Chicago, R. I. & R. Ry. Co. *v.* Crisman, 19 Colo. 30, 34 Pac. 286;
Denver & R. G. R. Co. *v.* Spencer, 25 Colo. 9, 52 Pac. 211;
Cooley on Torts, Vol. 2 (3d Ed.), pp. 1442–1445;
3 Elliott on Railroads (2d Ed.), sec. 1175.

Our library does not contain a copy of Elliott on Railroads.

What Judge Cooley says in the paragraph referred to, under the heading "Negligence and Recklessness Cooperating" falls far short of establishing the conclusion that the doctrine of last clear chance does not apply in the absence of actual discovery of plaintiff's perilous position in time to avoid injury.

The *Ackerman* case does not enunciate the rule or state any reason for it.

In the *Crisman* case, the Supreme Court of Colorado, after stating the general rule as to contributory negligence, is content to say that "a qualification of this rule pertains only in cases where the railroad company has notice of the dangerous situation of the party injured in time to avoid a collision by the exercise of ordinary care, and is guilty of such conduct as will imply an intent or willingness to cause the injury. *Railway Co.* v. *Hunter*, 33 Ind. 335; *Railway Co.* v. *Crammer*, 4 Colo. 524." Our set of Colorado Reports begins at volume 16. The Indiana case speaks for itelf. The *Spencer* case and *Denver & B. P. R. T. Co.* v. *Dayer*, 20 Colo. 132, throw but little additional light on the subject.

We find nothing either in the reasoning of the majority opinion in the *Rider* case, or in the authorities there cited to support the *dictum* in the *Cobb* case. Certainly the language used in discussing the cases of *McKeon* v. *Railway Co.* (20 App. Div. 601, 47 N. Y. Supp. 374) and *Wasmer* v. *Railroad Co.* (80 N. Y. 212, 36 Am. Rep. 608) does not distinguish between discovered peril and constructive knowledge thereof. The concluding statement concerning the *Wasmer* case is that the act of an engineer in running upon plaintiff's intestate "when he could have been discovered in time to stop the train, was the sole proximate cause of the injury."

The first of the two Minnesota cases is somewhat more in point. There the court said:

"Counsel for plaintiff contend that it was not necessary, in order to make the instructions applicable, that the motorman should have actually seen the plaintiff in a place of danger in time to have avoided the injury; that it was sufficient if, in the exercise of due care, he ought to have discovered him. Any such rule in cases of concurrent negligence proximately contributing to the injury would practically do away with the doctrine of contributory negligence altogether."

This statement leaves us at liberty to assume that, if the rule invoked by counsel (in the Minnesota case) be confined to cases wherein the negligence of plaintiff is not

concurrent with that of defendant nor a proximate cause of the injury, the doctrine of contributory negligence may survive.

In the *Bennichsen* case, the reason assigned by the California court for refusing to adopt the theory of constructive knowledge is that "no case has gone that far; and to go that far would be to practically destroy the whole doctrine of contributory negligence."

In *Cullen* v. *The Baltimore & Potomac Railroad Co.* the Court of Appeals of the District of Columbia is more explicit, but the position there taken has since been abandoned at least in so far as street railways are concerned. *Washington R. & E. Co.* v. *Cullember,* 39 App. D. C. 316; *Washington Ry. & Electric Co.* v. *Stuart,* 50 App. D. C. 74; and *Washington Ry. & Electric Co.* v. *Buscher* 54 App. D. C. 353. The reasoning in the *Cullen* case, however, is no more applicable to the case of a railroad than it is to that of a street railway. Hence the Court of Appeals in abandoning its original position has of necessity repudiated the reasoning upon which that position was based.

As shown by the *Cullember* case, *Chunn* v. *City & Suburban Ry. Co.,* foremost of the authorities cited in the *Cobb* case, does not support the *dictum* of the Circuit Court of Appeals but points rather to a contrary conclusion.

If there be any sound reason for the *dictum* in the *Cobb* case, it is not to be found in the cases there cited.

Returning to appellant's brief, the article in 3 Harvard Law Review is authority (although no authority is needed) for the statement that the general rule of contributory negligence is "founded largely, if not wholly, upon considerations of public policy."

The courts of this Island are not so firmly bound by the doctrine of contributory negligence as are those in common law jurisdictions. Section 1803 of our Civil Code provides that: "A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged

to repair the damage so done." Section 1804 makes the owner or director of an establishment or enterprise "equally liable for the damages caused by their employees in the service of the branches in which the latter may be employed or on account of their duties." The final provision is that "the liability referred to in this section shall cease when the persons mentioned therein prove that they employed all the diligence of a good father of a family to avoid the damage." No mention is made of contributory negligence.

See also *Rakes* v. *The Atlantic Gulf & Pacific Co.*, 7 Phil. 359.

The doctrine of contributory negligence has been adopted in this jurisdiction together with and subject to the limitations imposed by the rule in *Davies* v. *Mann*. Whether that rule is to be applied only in cases of actually discovered peril, or extended to include cases in which, by the exercise of ordinary care, plaintiff's peril might have been discovered is a question of expediency. It was touched upon in the *Vidal* case, but expressly reserved for future consideration.

A sufficient answer to the reasoning of the Supreme Court of Iowa in the *Keefe* case and of the majority in the *Bourrett* case may be found in a dissenting opinion filed by Judge Ladd in the case last mentioned and in a note to that case in 36 L.R.A. (N. S.) 957.

As pointed out in the note:

". . . . It is not clear that the majority opinion in Bourrett v. Chicago & N. W. R. Co. by the statement that 'the doctrine of last chance is founded on actual knowledge of plaintiff's negligence', meant to deny that the non-performance of a duty to discover the danger will sustain the doctrine when the defendant's negligence in failing to discover the danger must be deemed to have continued after the culmination or cessation of plaintiff's negligence, or to affirm more than that the actual discovery of the danger is essential to the applicability of the doctrine where the negligence of both parties was at all times concurrent. As a matter of fact, it will be observed that the majority were of the opinion that the negligence of both parties culminated at the instant of the collision, and that

the defendant, from that time, was as helpless to discover the plaintiff's peril as the plaintiff was to extricate himself from his perilous position. . . . At all events, in view of the majority's conclusion that the circumstances negatived the continuance of the defendant's negligence after the cessation of plaintiff's there was no occasion for it to go any further than to declare that when the negligence of both parties is concurrent, actual knowledge of the danger is essential to make the doctrine applicable. If the statement goes beyond that point, it is to that extent *obiter*."

As pointed out by Judge Ladd, "no actual knowledge of the peril of the historic donkey in the highway was shown in the celebrated case of *Davies* v. *Mann*. . . . . in which the rule is supposed to have originated; the failure to discover and avoid injury to him being the true ground of the negligence."

If the text in 20 R.C.L. 143 means that decisions upholding the doctrine of constructive knowledge "virtually abolish the doctrine of contributory negligence," the statement can not be substantiated. If it could be, the question would then arise whether the result might not be justly regarded as a survival of the fittest.

Ruling Case Law cites *Smith* v. *Norfolk, etc., R. Co.,* 114 N. C. 728, 19 S. E. 863, 25 L.R.A. 287; *Drown* v. *Northern Ohio Traction Co.,* 76 Ohio St. 234, 81 N. E. 326, and a note in Ann. Cases 1912 B, 889. In each of the two cases the negligence of the defendant and the contributory negligence in question are treated as concurrent. Hence, they do not support the text. In the North Carolina case the court said:

"Counsel insists that, until the actual discovery of the person apparently in danger, the negligence of such person cannot be said in a legal sense to precede that of the defendant; and therefore, unless the injury could have been avoided by the exercise of ordinary care after such discovery, the plaintiff has no cause of action. It must be manifest that, if this is the correct view, the rule in question would have but little room for application; for when an engineer actually sees a person apparently insensible to danger, and fails to use ordinary care to avoid his injury, he is guilty of such a reckless and wanton disregard of human life that his conduct is so far

regarded as willful as to practically place him entirely outside of the law of negligence . . . ." Beach, Contrib. Neg. 55.

. After some discussion of authorities cited by counsel, the court goes on to say: .

". . . . A discriminating writer remarks: 'But these cases may rest on the principle that it is no want of ordinary care not to look out for persons where they have no right to be.' . . . Judge Thompson's 'discovery clause,' . . . seems to be based in part upon this very idea. 2 Thomp. Neg. 1157, sec. 7. Judge Thompson . . . admits that his view is not sustained by the weight of authority, and . . . proceeds to lay down the rule which omits the discovery feature, and which has been literally adopted by this court in *Farmers Case, supra,* and many others. That a discovery of the danger is not necessary to make the negligence of the plaintiff a proximate cause of the injury is evident from the case of Butterfield v. Forrester, 11 East, 60, the earliest decision upon the subject of contributory negligence. . . . So on the other hand, in the case of Davies v. Mann, it did not appear that the defendant discovered the historic donkey fettered upon the highway, and it seems that the failure to discover and avoid him was the true ground of the action. It is also to be remarked that in the first case in which the principle of *Davies* v. *Mann* was applied by this court it did not appear that the defendant saw the plaintiff in the place of danger; and it was held that, although the plaintiff was negligent, yet it was previous to that of the defendant, who, by the exercise of ordinary care, might have avoided the injury. Gunter *v.* Wicker, *supra.* . . .

"Applying the rule which we have stated to accidents upon railroad tracks, it may be illustrated as follows: First, there must be a duty imposed upon the engineer, as otherwise there can be no negligence to which the negligence of the injured party is to contribute. The duty under consideration is to keep a vigilant lookout (consistent with other necessary duties in running the train) in order to discover and avoid injury to persons who may be on the track, and who are apparently in unconscious or helpless peril. . . . . To say that the principle of *Davies* v. *Mann* does not apply until the discovery of the danger is to practically abrogate the duty."

In the note (Ann. Cas. 1912 B, 889) the nearest approach to the language of the text in R.C.L., *supra,* is to be found

in this quotation from *Watson v. Mound City St. R. Co.,* (Mo.) 34 S. W. 573:

"To carry this doctrine (of last chance) to the length of saying that one who knowingly crosses the track of a railway, in such close proximity to a moving train as to be struck thereby before he could cross, would not be guilty of concurring negligence, would virtually abolish the law of contributory negligence altogether."

In *Nehring* v. *Connecticut Co., supra*, the Supreme Court of Connecticut reaches the following conclusion:

. . . . "it may well be questioned whether the doctrine deserves a classification and a name as of an independent principle. But if . . . it is to be dignified in that way, it is apparent that there is no manner of inconsistency between it and the contributory negligence rule, and that the domain of the latter rule is in no way invaded or narrowed by a full recognition of it. . . ."

In *Drown* v. *Northern Ohio Traction Co., supra*, (also reported in 10 L.R.A. (N. S.) 421) the Supreme Court of Ohio says:

. . . "Now, it must be apparent, . . . that it can be applied only in cases where the negligence of the defendant is proximate, and that of the plaintiff remote; for, if the plaintiff and the defendant both be negligent, and directly contributing to produce the accident, then the case is one of contributory negligence pure and simple. But, if the plaintiff's negligence merely put him in the place of danger, and stopped there, not actively continuing until the moment of the accident, and the defendant either knew of his danger, or, by the exercise of such diligence as the law imposes on him, would have known it, then, if the plaintiff's negligence did not concurrently combine with defendant's negligence to produce the injury, the defendant's negligence is the proximate cause of the injury, and that of the plaintiff is a remote cause. This is all there is of the so-called doctrine of 'the last clear chance.' "

In a note to *Rowrrett* v. *Chicago & N. W. R. Co.,* at page 961, it is said that when certain things there enumerated are remenbered "the apprehension that the extension of the doctrine to the omission of a duty to discover the danger will unduly extend the liability of defendants, and in effect ab-

rogate the doctrine of contributory negligence, has but little substantial foundation except, parhaps in jurisdictions where the courts are too liberal in their views as to the circumstances which will interrupt the plaintiff's negligence.'' This is but a repetition of similar statements to be found in the preceding notes of the same series. Even common law courts, then, need not view w[ith alarm the possible extinction of the doctrine of contributory negligence, if they can agree with the annotator as to when and how the doctrine of last clear chance should be applied, and if they themselves are not "too liberal" in determining what will interrupt a plaintiff's negligence.

In this connection it is fair to add that the Circuit Court of Appeals for the Eighth Circuit has been most liberal in dealing with this question of interruption. See *Salt Lake & U. R. Co.* v. *Trumbull, supra,* wherein the *Cobb* case is discussed and distinguished.

The rule of constructive knowledge is fundamentally just and reasonable. It is wholesome and salutary from the standpoint of public policy, and is sustained by the decided weight of authority: *Consolidated Railroad Company* v. *Armstrong,* 92 Md. 554, 48 Atl. 1047; *Payne* v. *Healey,* 139 Md. 86; *State* v. *United Rwys. Co., supra; State* v. *Washington R. & A. R. Co.,* 149 Md. 443; *Miller* v. *Central Vermont Ry. Co.,* 113 Atl. 524; *Dent* v. *Bellows Falls & S. R. St. Ry. Co., supra; Fine* v. *Connecticut Co.,* 103 Atl. 901; *Dyer* v. *Cumberland County Power & Light Co.,* 115 Atl. 194.

From the opinion in the *Armstrong* case we take the following extract:

. . . "The difference between the modification of the general principle recognized as proper in Newbeur's Case and that sanctioned by this court in the recent cases is simply that in the former case the defendant was held liable if he could, by the exercise of reasonable care, after he became aware of the plaintiff's peril, have averted the accident, and in the later cases he was held liable if he could have prevented it after he became, or ought to have become, aware of the peril. There is no difference in principle between these

two forms of instruction to the jury, for it cannot be seriously contended that when the defendant is in a position from which he ought to see, or by the exercise of reasonable care could see, the plaintiff's peril, he may avert his face, or close his eyes, and not see it, and then escape liability for an injury resulting from such conduct on his part."

In *Dyer's* case the Supreme Court of Maine said:

" 'Where the defendant owes no duty to the plaintiff as in the case of trespassers there may be sound reasons for adhering to the rule of actual knowledge.' Shearman and Redfield on Neg. (5th Ed.), sec. 484.

"In the case of railroads, however, using the public streets, public policy, we think, requires them to be held responsible in case injuries to those lawfully using the highways result from the failure on the part of their servants to use reasonable care in keeping a lookout for travelers, provided, of course, the traveler was not also actively negligent at the time and thereby contributed to his own injury, and the defendant's servants if they had exercised reasonable care could have discovered the plaintiff's peril in time to have avoided injuring him. Otherwise motormen of street cars might be guilty of the grossest negligence through inattentiveness to their duties—talk with passengers in their cars, or gaze at people on the sidewalks—and unless it was shown that they actually saw the plaintiff in his exposed position the railroad would escape all liability. Such a doctrine has been characterized, and not too strongly, by Thompson in his work on Negligence, vol. 2, sec. 476, as 'a miserable doctrine in favor of which not one word can be said'."

The author of the note to *Bogan* v. *Carolina Central R. Co.*, 55 L.R.A. 418, tells us at page 421 that:

. . . "if the court holds that the doctrine applies when the defendant actually discovers the plaintiff's peril, there seems to be no logical reason for denying its applicability when the defendant did not actually discover such peril, if it was his duty to have discovered it."

The note in 36 L.R.A. (N. S.) at page 958 says:

"When the negligence of the defendant, in failing to discover the danger, continued as an efficient cause of the accident after the antecedent negligence of the plaintiff must be deemed to have ceased

—the decided tendency, though there is a conflict on the subject, is toward the view that the failure of defendant to discover the danger is sufficient to sustain the doctrine, and that the actual discovery of the danger is not necessary, if, under the circumstances, there was a duty incumbent upon the defendant to discover the danger and the performance of that duty would have enabled the defendant to avert the accident.''

In *State* v. *United Rwys. Co., supra,* the court quotes from 3 Elliott on Railroads, par. 1542, as follows:

'' 'In most jurisdictions, under the doctrine of the ''last chance'' or ''last clear chance'' the plaintiff may still recover, notwithstanding he has negligently gone into a place of peril, where he has a right to go without being a trespasser, if the defendant discovered, or ought in the exercise of ordinary and reasonable care to have discovered, his peril in time by the exercise of such care to avoid injury to him and failed to exercise such care by which the injury would have been avoided.' ''

In *Locke* v. *Puget Sound International Ry., supra,* the Supreme Court of Washington quotes with approval a similar paragraph from Nellis on Street Railways (.2d Ed.) 462. See also *Turnbull* v. *New Orleans & C. R. Co.,* 120 Fed. 783, and *Philadelphia & R. R. Co.* v. *Klutt,* 148 Fed. 818, (certiorari denied, 204 U. S. 672). In *Kansas City Southern Railway Co.* v. *Ellzey,* 275 U. S. 236, the Supreme Court, speaking of the doctrine of the last clear chance, through Mr. Justice Stone said:

''That doctrine *rightly applied in the Chunn case,* amounts to no more than this, that a negligent defendant will be held liable to a negligent plaintiff if the defendant, aware of the plaintiff's peril or *unaware of it only through carelessness,* had in fact a later opportunity than the plaintiff to avert an accident. Grand Trunk Ry v. Ives, 144 U. S. 408; Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 558.'' (Italics ours.)

We can not agree with appellant that the doctrine of last clear chance must be confined to cases where plaintiff's peril was actually discovered in time to avoid injury.

Another contention is that the district court erred in maintaining that the place where the accident occurred was a public road. The brief for appellant does not cite any page of the record and we do not find that the district judge so maintained.

Appellant also says that the court erred in not finding that plaintiff was guilty of contributory negligence, and that such negligence was the direct and proximate cause of the accident, also in not holding that plaintiff had no right to recover because of such negligence. The contention, as developed in the brief, is in substance that in the absence of any additional evidence bearing on the question of contributory negligence, our opinion on the first appeal is conclusive upon this point. If the language used in that opinion is to be technically and literally construed, appellant's position is plausible enough. The expressions relied upon, however, should not be so construed. Whatever we may have assumed, whether rightly or wrongly, consciously or unconsciously, we were not there considering the question as to what constitutes the true basis of the doctrine of last clear chance. We did not have in mind at all the distinction between the theory of last clear chance as an independent doctrine or exception to the general doctrine of contributory negligence, and the theory whereby the doctrine of last clear chance has been merged to the vanishing point in the doctrine of proximate cause. See 45 C. J. 988, section 540, and the note in 55 L.R.A., *supra*.

Whatever may be said of our former opinion, it was not our purpose to foreclose further consideration of the question as to contributory negligence in connection with the doctrine of last clear chance. The district judge then, very properly declined to adopt the interpretation sought to be placed by defendant upon that opinion.

Appellant cites 25 R.C.L. 1255, section 116, and refers us to the following cases as applicable *a fortiori* to the facts in the case at bar. *State* v. *Cumberland Electric R. Co.,*

106 Md. 529, 68 Atl. 197, 16 L.R.A. (N. S.) 297; *Yellick* v. *Northern Ry. Co.,* 170 N. W. 941; *Kelley* v. *Boston Electric Co.,* 15 L.R.A. (N. S.) 282.

In *State, to Use of Carey* v. *Cumberland Electric R. Co., supra,* Carey "was struck by the car while in the act of stepping down backward from the hub of the wagon wheel toward, if not upon, a railroad track but 2 feet distant from the wheel, without taking the slightest precaution to ascertain whether a car was approaching." Only about six inches of the space between the rail and the wagon wheel was taken by the overhang of the car, a freight car. The court said:

"The counsel for the appellants contended with much ability, at the hearing of the appeal, that the case came within the operation of the doctrine of the last clear chance, upon the theory that the position of Carey while standing upon the hub was one of peril in which the motorman of the approaching car could, by the exercise of proper diligence, have seen him in time to have saved him from its consequences by giving timely warning or stopping the car. If his position on the hub was a perilous one,—as to which we express no opinion,—it was not the peril of that position, certainly not that peril alone, from which he lost his life. He was not struck while standing upon the hub, but while he was voluntarily and deliberately engaged in the very negligent act of getting down backward from the hub toward the track without even looking to see if a car was coming. There was no evidence in the record tending to prove that the motorman saw, or could have seen, Carey start to step down from the hub of the wagon toward the track in time to stop the car before it struck him or to give a more timely warning than the whistle, which he blew. Under these circumstances with clear proof of this distinct act of negligence on his part contributing directly to the accident, it would have been improper for the learned judge below to send the case to the jury to permit them to engage in speculation as to whether or not Carey would have been in peril if he had remained on the hub, or whether he could not have stood up in safety in the intervening space between the wagon and the railway track, as the car passed by."

If Carey had remained in a standing position upon the hub of the wagon wheel and had been struck by a passing car while in that position, a different case would have been pre-

sented. His act in stepping backward from the hub to the ground in front of an interurban car running at a high rate of speed without looking to see if the way was clear was a typical example of that negligent conduct on the part of a plaintiff ''which continues as an active agent in producing the conditions under which his injury was received until it becomes too late for defendant to avoid the accident.''

In the instant case, as already pointed out, after coming into a position of peril plaintiff did nothing to increase the danger of her situation. If the accident had occurred at an unfrequented spot in the open country, or alongside a country road, and if plaintiff had not been struck while traveling along a path parallel to the track but, without looking back had stepped upon the track in front of a rapidly moving interurban car, then we might or might not say, paraphrasing the language of the Maryland Court of Appeals, that it would be idle to speculate as to whether plaintiff would have been injured or imperiled if she had kept to the path.

Moreover, as already pointed out, the damages awarded plaintiff herein are damages arising out of the crushing of plaintiff's leg by the wheels of the car, not those caused by contact with the body of the car or with the ground, and as already shown, the injury complained of might have been avoided by the motorman if his negligent failure to discover plaintiff's peril had not continued up to the very moment of impact, when it was too late for plaintiff to have avoided such injury. There is no conflict in the testimony to the effect that he could have stopped his car at any time within but little more than an arm's length.

The *Yellick* case was decided by a divided court. The facts stated in the dissenting opinion differ from those set forth in the opinion of the majority. In the view taken by the latter:

''Plaintiff's evidence shows that he could see the approaching car at all times on his trip from the curb to the place he stopped

720

near the track to turn around. It is obvious that the car which hit him was near him, and that he necessarily would have seen it had he looked before he stepped into the zone of danger or after he had entered it. It is also undisputed that nothing occurred to divert his attention or to prevent him from seeing the approaching car had he looked while he traveled the last 8 feet of his trip, nor did his duties so engage him as to prevent him from looking for the car. The evidence permits of no inference other than that he must have seen the car approaching him if he kept a proper lookout as he proceeded from the curb to where he stopped or that he omitted to pay any attention to it. The failure to do either, under the facts and circumstances adduced by the evidence, is per se negligence on his part which manifestly contributed to produce the accident. . . ."

Obviously, in the opinion of the majority, the failure of the plaintiff to observe the approaching car while traveling from the curb toward the track was the proximate cause of the accident. The negligence on which the majority based its opinion was unquestionably active, continuous, and concurrent, unless divested of that character by circumstances not considered nor discussed at all by the court. If in the instant case plaintiff after passing through the Barletta gate had stepped upon the track in front of the approaching car, or if she had turned to her left between the side of a passing car and the fence and in so doing had been injured, her negligence would have been equally active, continuous and concurrent. We have no reason to doubt that if Yellick with his wheelbarrow, had turned into a passage-way something less than a meter in width between the street car track and a fence and after proceeding for some distance along such passage-way had been struck from behind without warning by a passing car which could have been stopped at any time within a distance of one meter, the Supreme Court of Wisconsin would have reached a different conclusion. Thus far, that court apparently has not had occasion to pass upon the doctrine of plaintiff's obliviousness to danger in its bearing upon the question of concurrent negligence.

A reading of the opinion in *Kelly* v. *Boston Electric Railroad Company, supra,* or of the first paragraph of the syllabus, will suffice to distinguish that case from the case at bar.

In *Mey* v. *Seattle Electric Company,* 92 Pac. 283, upon which appellant lays some stress, the situation was somewhat similar to that in the instant case but the distinguishing features are marked and important. There, the trial court "sustained defendant's motion for a nonsuit upon the ground (1) that he had failed to show negligence on the part of the defendant; and (2) that it appeared from the plaintiff's case that he was guilty of contributory negligence." The street between the car track and the curb was cluttered with piles of "sand, gravel, form boxes, etc." The owner of property abutting on the street was building a retaining wall and the sidewalk had been fenced off, but there were openings through which pedestrians might pass. There were also openings at frequent intervals through which a pedestrian traveling between the building materials and the track might reach a place of safety. For a part of the way at least there was also an open space between the building material and the sidewalk, making it unnecessary for pedestrians, to travel between such building material and the track. Moreover, it seems that when plaintiff was struck from behind by one of defendant's cars he had already passed the débris and had reached a point at which "there was room between a carriage or hotel bus and the railroad track for a man to past without being injured." The width of the open space between the track and the carriage or hotel bus does not appear from the opinion of the court.

The Supreme court of Washington said:

". . . This being true, it seems plain that it was the duty of the appellant, while traveling in close proximity to this track in a place where he testifies he knew that cars were passing at short intervals, to have exercised the ordinary caution of noticing, when he passed those points where there was not room for both man and car, whether there was any car which was liable to injure him.

According to the testimony, the track was on an open, paved street where the slightest observation would have discovered the approach of a car. Not having exercised this ordinary caution, we think the plaintiff was undoubtedly guilty of contributory negligence. Neither does it appear from the testimony that there was any negligence on the part of the motorman of the car. There is no proof that bells were not rung at the crossing, or that the ordinary precautions were not taken. There being room for the passenger to step out of danger every few steps all along the route which he traveled, the motorman, we think, might well be justified in concluding that a pedestrian would step out of the way of the car, instead of remaining on the track, or so close to the track that he would be run down by it. . . ."

If in the instant case there had been openings or recesses at frequent intervals in the Barletta fence, the *Mey* case would be more in point. Even if the Barletta fence could be eliminated, we would still be confronted by the fact that the motorman, had he been looking ahead, could have stopped his car in time to avoid the crushing of plaintiff's leg after realizing (as in that event he would have realized) that plaintiff was unaware of impending danger and did not intend to step aside. In the *Mey* case (as in *Yellick* v. *Northern Ry. Co.*, and in *Kelly* v. *Boston Electric Railroad Company, supra*) if the doctrine of last clear chance could have been invoked, or if there were any circumstances by reason of which the negligence of plaintiff might be deemed to have ceased, or by reason of which the motorman should have known that plaintiff was unconscious of his perilous position, while there was yet time to avoid the accident, no such question was raised nor considered by the court. The opinion in *Locke* v. *Puget Sound International Ry. & Power Co., supra,* decided some ten years later, leaves little room for doubt as to what would have been the result in the *Mey* case if it had been apparent to the motorman that *Mey* had no present means of escape or that he was unconscious of danger and would not make any effort to save himself.

Appellant also quotes from an opinion rendered in Department One of the California Supreme Court in *Everett* v. *Los Angeles, etc., Ry. Co.*, 115 Cal. 105, decided in 1896. A majority of the court adhered to the views there expressed, after further consideration in Bank. There is a dissenting opinion by Judge Temple in which Chief Justice Beatty and Judge Henshaw concurred. See also *Berguin* v. *Pacific Elec. Ry. Co., supra.*

In the *Nehring* case the Supreme Court of Connecticut said:

". . . It is hard to find a branch of the law which has received more unsatisfactory and inadequate treatment at the hands of the courts than has this, or one which is more in need of intelligent and consistent determination. The cases involving in some way the matter are numerous, and one must be hard to suit who cannot find in some of them implied or express support for his preconceived view."

We shall not stop to discuss or distinguish the case of *Warren* v. *Fitchburg Railroad Co.*, (1864), 85 Am. Dec. 700, from which appellant quotes as follows:

". . . If the whole evidence introduced by the plaintiff has no tendency to show care on his part but on the contrary, shows that he was careless, it is the duty of the court to direct the jury, as a matter of law, to return a verdit for the defendant."

Four other cases cited but not discussed by appellant need only to be mentioned in passing. They are *Ford* v. *Paducah City Ry.*, 8 L.R.A. (N. S.) 1093; *Creamer* v. *West End St. R. Co.*, 16 L.R.A. 490; *Farrello* v. *New York Ry. Co.*, 168 N. Y. 633, and *Pombach* v. *Crescent City R. Co.*, 23 So. 604.

The only authority cited by appellant in support of the contention that the facts stated in the complaint do not entitle plaintiff to relief under the doctrine of last clear chance is *St. Louis & S. F. R. Co.* v. *Schumacher*, 152 U. S. 77. We need not go into the question of pleading at this time. Any omission in the complaint as amended before the

724

second trial was supplied by the evidence, and defendant could not have been misled to its prejudice nor taken by surprise in view of the result on the first appeal.

The judgment appealed from must be affirmed.